IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

MICHAEL EUGENE LYONS,

      Plaintiff,

v.                                          CASE NO. 1:12-cv-28-MP-GRJ

MICHAEL J ASTRUE, Commissioner
of Social Security,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability benefits and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. (Doc. 1).   The Commissioner has answered (Doc. 5), and both parties have filed briefs outlining their respective positions. (Docs. 9 & 10).  For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff filed his applications for disability and supplemental income benefits on November 24, 2009, alleging a disability onset date of July 15, 2009 due to hernia and learning disability.  (R. 121-31.)  The ALJ found that he had the severe impairments of groin pain status-post hernia repair, learning disorder, and borderline intellectual functioning.  (R. 12.)  Plaintiff was born in 1971 and was 38 years old at the time of his alleged onset of disability.  He graduated from high school and previously worked as a groundskeeper.  (R. 19.)

Plaintiff's applications were denied initially and upon reconsideration. (R. 62-68, 71-75.) An administrative law judge (ALJ) conducted a hearing on August 17, 2011 and entered an unfavorable decision on September 23, 2011. (R. 10-21.) The Appeals Council denied Plaintiff's request for review on December 6, 2011. (R. 1-6.) Plaintiff filed the Complaint in this case on February 6, 2012. (Doc. 1.)

## II. <u>STANDARD OF REVIEW</u>

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4]

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982) and <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] <u>Edwards</u>, 937 F.2d at 584 n.3; <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] <u>Foote</u>, 67 F.3d at 1560; *accord,* <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); <u>Parker v. Bowen</u>, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6]  The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8]  First, if a claimant is working at a substantial gainful activity, he is not disabled.[9]  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10]  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is

---

[5] <u>Keeton v. Dep't Health and Human Servs.</u>, 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(l), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. <u>Carnes v. Sullivan</u>, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

disabled.[11]  Fourth, if a claimant's impairments do not prevent him from doing past

relevant work, he is not disabled.[12]  Fifth, if a claimant's impairments (considering his

residual functional capacity ("RFC"), age, education, and past work) prevent him from

doing other work that exists in the national economy, then he is disabled.[13]

    The burden of proof regarding the plaintiff's inability to perform past relevant

work initially lies with the plaintiff.[14]  The burden then temporarily shifts to the

Commissioner to demonstrate that "other work" which the claimant can perform

currently exists in the national economy.[15]  The Commissioner may satisfy this burden

by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive

determination that a claimant is disabled or not disabled.[16]

    However, the ALJ should not exclusively rely on the Grids when "the claimant

has a non-exertional impairment which significantly limits his or her basic work skills or

when the claimant cannot perform a full range of employment at the appropriate level of

---

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

exertion."[17]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19]  Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[20]  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

## III.  <u>SUMMARY OF THE RECORD</u>

Because Plaintiff's challenge on appeal pertains only to his mental impairments, the summary of the record is limited to evidence relevant to those impairments.

## A.  <u>Medical Evidence</u>

As the ALJ's step two finding reflects, Plaintiff suffers from the severe impairments of groin pain status post hernia repair, learning disorder, and borderline intellectual functioning.  (R. 12.)   The evidence of record contains several IQ tests from

---

[17] <u>Wolfe v. Chater</u>, 86 F.3d 1072, 1077 (11th Cir. 1996). *See* <u>Jones v. Apfel</u>, 190 F.3d 1224, 1229 (11th Cir. 1999); <u>Walker</u>, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] <u>Walker</u>, 826 F.2d at 1003.

[19] <u>Wolfe</u>, 86 F.3d at 1077-78.

[20] *See id.*

Plaintiff's childhood.  In 1979 (age 8), his full-scale IQ score on the Wechsler

Intelligence Scale for Children - Revised was 47; at age 10 it was 57; at age 12 it was

58; and at age 15 was 56.  (R. 15, 240.)  Excerpts from a request to adjudicate

Plaintiff's child dependnt and from the order adjudicating her dependent, circa 1998,

state: "The father is developmentally disabled and unable to care for the child or grasp

the seriousness of the mother's situation."  (R. 242-43.)

Janet K. Humphreys, Ph.D., performed a psychological evaluation of Plaintiff on

February 3, 2010.  Plaintiff reported that he had dyslexia and difficulty reading.  He said

that he has a checking account and uses his bank card to get cash and pay bills,

though his aunt has to help him write checks.  Dr. Humphreys could not rule out mild

mental retardation but did not assess a primary diagnosis for Plaintiff.  She concluded

that his job options would be very limited by his low IQ, impaired memory, social skills,

and judgment.  (R. 303-308.)

State agency consultants David L. Kirk, Ph. D. and Elizabeth Michalec, Ph. D.,

also made findings regarding Plaintiff's mental impairments.  On May 5, 2010, Dr. Kirk

performed a psychiatric review technique and concluded that Plaintiff had mild

limitations in the areas of activities of daily living and maintaining social functioning and

moderate limitations in maintaining concentration, persistence, or pace.  In his mental

residual functional capacity assessment, Dr. Kirk opined that Plaintiff moderate

limitations in the ability to understand and remember instructions, carry out detailed

instructions, sustain an ordinary routine without special supervision, and complete a

normal workday day and workweek with interruptions from psychologically based

symptoms and perform at a consistent pace without unreasonable break.  Dr. Kirk found no significant limitations in the remaining functional areas.  In his functional capacity assessment, Dr. Kirk opined that the evidence from Plaintiff's school records did not support mental retardation and that Plaintiff's performance IQ, which is the best indicator of his mental condition, has been consistently higher than his verbal IQ.  Dr. Kirk also opined that Plaintiff's earnings and high level of adaptive functioning document that he is not mentally retarded.  (R. 309-26.)

On September 1, 2010, Dr. Michalec performed a case analysis confirming Dr. Kirk's conclusions.  Dr. Michalec noted that the evidence submitted regarding court records describing Plaintiff as developmentally disabled and unable to care for his child were not relevant to eligibility for benefits and that Plaintiff was not mentally retarded because Plaintiff has worked and earned at the level of substantial gainful activity until he had a physical injury.  (R. 349.)

**B.    Hearing Testimony**

At his administrative hearing on August 17, 2011, Plaintiff testified that he lived with his mother and stepfather for the past two years and before that lived with his uncle in Gainesville.  Prior to that, he and his wife lived together in an apartment until her death in 1999.  He has one child, who was 12 years old at the time of the hearing, and his brother has custody.

Plaintiff testified that he has a checking account, can track his account, and has not had any problems with bad checks. He goes shopping and has a driver's license, although his license was suspended for failure to pay child support.  Plaintiff can cook a

variety of meals. Plaintiff's work history was primarily has a groundskeeper. He testified that he worked full-time at Gator Landscaping for 20 years but stopped when he was injured on the job and then the business closed. Plaintiff testified that he supervised a crew of 3-4 people and would tell them what to do and check their work. He completed the 12th grade, but all of his classes were in special education.

Plaintiff testified that he can read (but not well), can write, and can perform basic math skills. He also testified that he can make change at the store and is good with budgeting his money. He enjoys spending time with his daughter and taking her to the movies, the park, and other places. Plaintiff testified that he also enjoys watching movies, playing video games, and going to sporting events. (R. 32-46.)

## C.   Findings of the ALJ

The ALJ found that Plaintiff did not meet Listing 12.05B because "although claimant's IQ scores reflect lower intellectual functioning, the evidence of record indicates an absence of deficits in adaptive behavior." (R. 16.) The ALJ concluded that Plaintiff did not meet Listing 12.05C because he did not have the requisite IQ score or adaptive deficits. (*Id.*) With regard to Plaintiff's adaptive abilities, the ALJ noted that Plaintiff manages his own bills, cares of his own personal needs, shops, cooks, cleans his home, previously obtained a driver's license, and reported a 20-year history working as full-time groundskeeper, during which time he supervised a crew. (R. 15.)

The ALJ then found that the Plaintiff had the residual functional capacity to perform medium work except:

> [H]e completed 12th grade special education; he reads and writes at a first or second grade level; he has a fair ability to perform math; he is moderately

limited in the ability to understand, remember, and carry out detailed instructions; his diagnoses include borderline intellectual functioning and learning disorder; he can function independently and adequately in activities of daily living and basic tasks; and he should be limited to simple, repetitive tasks.

(R. 16.)  A vocational expert testified that Plaintiff could not perform his past relevant work as a groundskeeper (medium exertion, semi-skilled work) but could work as kitchen helper, cleaner, small product assembler, or ticket taker.  (R. 19-20.)

## IV.  Discussion

Plaintiff argues that the ALJ erred at step three by not finding that he met the requirements of Listing 12.05B or 12.05C for mental retardation due to his low IQ score and additional severe impairments.  (Doc. 9.)  However, Plaintiff does  not have the requisite adaptive deficits to meet the requirements of the listing and therefore the ALJ's decision is due to be affirmed.

The listing for mental retardation in Listing 12.05 requires that the claimant's impairment "satisf[y] the diagnostic description in the introductory paragraph" *and* any one of the four sets of criteria that follow it.[21]  The diagnostic description states that an individual is mentally retarded if they have a "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the

---

[21] 20 C.F.R. Part 404, App. 1, Subpart P, 12.00A, ¶ 4.  Where adults have not had intelligence testing prior to age 18, a diagnosis of mental retardation satisfying the diagnostic requirement of this Listing could be inferred from the plaintiff's history and current functioning.  Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50,746, 50,753 (Aug. 21, 2000) (to be codified at 20 CFR Parts 404 and 416).

impairment before age 22."[22]   Subaverage general intellectual functioning refers to an IQ of about 70 or below on various standardized intelligence tests.[23]

Listing 12.05B requires that the claimant also have a "valid verbal, performance, or full scale IQ of 59 or less."  Listing 12.05C requires that the claimant also have a "valid verbal, performance, or full scale IQ of 60 through 70 <u>and</u> a physical or other mental impairment imposing an additional and significant work-related limitation or function."[24]

Plaintiff's school records indicate that his full-scale IQ scores ranged from 47-58 during tests administered between the ages of 8-15.  (R. 240.)  However,  IQ alone is not enough to determine mental retardation because "[i]mpairments in adaptive functioning, rather than low IQ, are usually the presenting symptoms in individuals with Mental Retardation."[25]  While the IQ often remains stable, adaptive function can improve with training,[26] and therefore a valid IQ score is not enough to determine if someone is mentally retarded.[27]  Accordingly, the primary issue is whether Plaintiff has

---

[22]  <u>Crayton v. Callahan</u>, 120 F.3d 1217, 1219 (11th Cir. 1997) (finding that at the very least, to be considered for disability benefits under Listing 12.05, the claimant must meet all parts of the diagnostic definition in the introductory paragraph: "(1) significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." Once these three elements have been established, the court looks to paragraphs A ,B, C, and D to assess the severity of Plaintiff's mental retardation and its impairment on plaintiff's ability to work.

[23]  <u>DSM-IV</u> at 42.

[24]  20 C.F.R. Part 404, App. 1, Subpart P, 12.05C.

[25]  <u>DSM-IV</u> at 42.

[26]  <u>Id.</u>

[27]  "Mental Retardation would not be diagnosed in an individual with an IQ lower than 70 if there are no significant deficits or impairments in adaptive functioning."  See <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837(11th Cir. 1992) ("[A] valid IQ score need not be conclusive of mental retardation where the I.Q. score

the requisite deficits in adaptive functioning to meet the requirements of Listings 12.05B and 12.05C.

In the instant case, the ALJ's conclusion that Plaintiff does not meet the requirements of Listing 12.05B or 12.05C is supported by substantial evidence. Specifically, despite Plaintiff's low IQ scores, he does not meet Listing 12.05B or 12.05C because the evidence does not show the required deficits in adaptive functioning. The medical evidence and Plaintiff's activities of daily living support the ALJ's finding.

Although Dr. Humphreys diagnosed rule-out mental retardation and opined that Plaintiff's memory was impaired to the point it might impact his ability to carry out simple instructions, the ALJ found that her findings in the mental status exam were inconsistent. As the ALJ noted, Dr. Humphrey's report discloses that Plaintiff was cooperative, maintained a variable and expressive affect, had logical and goal-oriented thought processes, showed good judgment and insight for hypothetical situations, and exhibited intact immediate, recent, and remote memory. (R. 303-308.)

Dr. Kirk opined that the evidence from Plaintiff's school records did not support mental retardation and that Plaintiff's performance IQ, which is the best indicator of his mental condition, has been consistently higher than his verbal IQ. Dr. Kirk also opined

is inconsistent with the other evidence in the record on the claimant's daily activities and behavior.") (citing Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986)).

that Plaintiff's earnings and high level of adaptive functioning evidence that Plaintiff is

not mentally retarded.  Dr. Kirk found only mild to moderate limitations in Plaintiff's

mental functioning.  (R. 309-26.)

State agency consultant Dr. Michalec confirmed Dr. Kirk's conclusions, noting

that Plaintiff worked and earned at the level of substantial gainful activity until he had a

physical injury.  (R. 349.)  The record shows that Plaintiff worked full-time for

approximately 20 years at the same business as a groundskeeper.  Based on his

earnings, this work was more than sufficient to constitute substantial gainful

employment.  Further, Plaintiff testified that he supervised a small crew, telling them

what work tasks to perform and checking their work.  Plaintiff stopped work because of

a physical injury and not because of mental deficits.  The VE in this case testified that

as Plaintiff performed his work, it was semi-skilled.  As such, Plaintiff's work history and

his supervisory responsibilities as an employee do not reflect the requisite adaptive

deficits for Listing 12.05.

Plaintiff's activities of daily living also demonstrate that he does not have the

requisite adaptive deficits to meet the Listing.  He has a driver's license.  He is able to

read and write (admittedly not very well due in part to his dyslexia), can perform basic

math, and can also make change, manage his own finances, shop, cook a variety of

meals, clean, and care for his own personal needs.  (R. 32-37.)

In arguing that he has significant adaptive deficits Plaintiff relies upon the state's

finding when removing his child from his custody as a newborn. The evidence Plaintiff

points to is a child protective investigator's finding in 1998–when Plaintiff was father to a

newborn and married to a woman who apparently suffered from mental illness–that

Plaintiff "was developmentally disabled and unable to care for the child or grasp the

seriousness of the mother's situation."  The state court later used the same language in

adjudicating Plaintiff's daughter dependent.  (R. 242-43) The ALJ acknowledged the

State of Florida court records but discounted their weight because the standards for a

state court's adjudication of a child as dependent of the state is distinct from the

standards for meeting the definition of disabled under the Social Security Act.

Furthermore, the ALJ concluded that such evidence does not overcome the substantial

evidence of record that Plaintiff does not have the requisite deficits in adaptive

functioning to meet the Listing.

Accordingly, the Court concludes that the ALJ did not err in  finding that Plaintiff

did not meet the requirements of Listing 12.05B or 12.05C because Plaintiff failed to

demonstrate that he has the required deficits in adaptive functioning.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of

the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** in Gainesville, Florida, on December 26, 2012.

*s / Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.